UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA

CARMINE PERSICO, Jr.,
Reg. No. 74666-158
    *Plaintiff,*

Vs.

Case No. 5:18 cv 578

LAWRENCE SICHEL, MD,
WARDEN ANDREW MANSUKHANI,
    *Defendants.*
_____/

## COMPLAINT

### I.
### JURISDICTION

1. This action arises under the Eighth Amendment to the US Constitution pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Due Process Clause of the Fifth Amendment, and 28 USC §1331 asserting Defendants' deprivation of Plaintiff's rights, privileges, and immunities in that that prison officials have been deliberately indifferent to Plaintiff with respect to Plaintiff's serious health care needs, all without due process of law.

2. Plaintiff seeks preliminary and permanent injunctive relief pursuant to Rule 65(a)(1), Fed. R. Civ. P, declaratory judgment, 28 US §2201, and damages as set forth herein and in the Emergency Motion for Preliminary Injunction filed concurrently herewith.

## II.
## VENUE

3. Venue properly lies in this judicial district as the Defendants' acts and omissions occurred herein and Defendants reside or do business in this district. 28 USC §1391.

## III.
## PARTIES

4.. Plaintiff, Carmine Persico, Jr. is an inmate at the Federal Correctional Institution (FCI I) at Butner, North Carolina, serving an aggregated sentence of 139-years imprisonment. Plaintiff has been in continuous uninterrupted custody since February 15, 1985. He has now served approximately 35-years or 408 months in federal prison.[1]

5. Plaintiff submitted an Application for Compassionate Release to Defendant Mansukhani on or about June 8, 2018. *See* **EX 1**.

6. Defendant, Lawrence Sichel, MD, is the physician at FCI I charged with attending to the medical needs of inmates in his charge, including Plaintiff. Dr. Sichel committed specified acts or omissions rising to the level of deliberate indifference to Plaintiff's serious health care needs.

7. Defendant, Warden Andrew Mansukhani, is the chief executive officer of the at FCI I- Butner. Defendant Mansukhani denied Plaintiff's initial application for

---

[1] While a number of codefendants in Plaintiff's underlying criminal case died of natural causes in prison, one codefendant, Christopher Furnari, Reg. No. 19815-054, was granted Compassionate Release— and following extremely lengthy litigation before the US Court of Appeals for the Third Circuit— he was released under 18 USC §4205(g) after service of significantly less time than Plaintiff, 334-months. There may be differences in culpability but the most significant issue in the case *sub judice* is whether Plaintiff meets the criteria for Compassionate Release resulting in an abuse of law and process.

Compassionate Release pursuant to 18 USC §3582(c)(1)(A).[2] *See also* 28 CFR §571.60, *et. seq.* on August 8, 2018. **EX. 2.**

## IV.
## STATEMENT OF FACTS

8. Plaintiff, Carmine Persico, Jr., is **85-years of age now facing an immediate leg amputation above the knee *or* insertion of prosthetic "stents" in the leg(s).** Plaintiff seeks to avoid the BOP's improvident and potentially medically unnecessary treatment.

9. Plaintiff suffers from a combination of seriously debilitating medical conditions but none so profound and radical as the **Defendants' treatment proposal to amputate Plaintiffs leg *or* implant a prosthetic stent in [each] leg.**[3]

10. According to recently available medical records, Plaintiff faces three choices presented by medical staff at Duke University Hospital to whom the BOP outsourced such treatment and care at significant taxpayer expense. The Duke records note:

> **Assessment & Plan**
> **Mr. Persico is a[n] 85 y.o. male with severe R>L PAOD that *is not amenable to endovascular repair*. Discussed options as follows:**
>
> 1. *Continue pain control and wound care with no expectation in improved condition and need for amputation of RLE if infections become uncontrolled.*

---

[2] Technically, as an "old law" inmate, the Compassionate Release Application should be considered under the provisions of 18 USC §4205(g).

[3] At the time of filing this Complaint, Plaintiff has not had full access to his medical records.

3

> 2. **Right open femoral endartectomy with intraoperative** *placement of endovascular stent.*
>
> 3. *Amputation above the knee.*
>
> 4. **Aorto-bifem BPG would yield the most benefit but** *the risk of fatal complications outweighs any benefit and was not considered as a viable option…*
>
> **Severe peripheral artery disease (CMS-HCC)**
>
> Will plan on awaiting Mr. Persico's decision on what option he would like to persue (*sic*)… [4]

**EX. 3**, (Duke Surgery Clinical Note)(10/04/2018) at 3-4 (emphasis in bold italic added). Defendant Sichel adopted the Physician Assistant's treatment options in a clinical note recorded 10-days later.

11. Exhibit 2 also references Plaintiff's "Chronic kidney disease (CKD), stage III (moderate)(CMS-HCC)." The medical literature reflects an extremely **high correlation between such kidney disease and peripheral arterial disease** rendering Plaintiff a significantly worse risk for a positive medical outcome through leg amputation *or* stents.[5]

---

[4] As a mere prisoner, Plaintiff, in fact, has little or no control over the institution's medical actions that commences upon their unannounced referral of the inmate to Duke University Hospital. Disclosure of the date of transfer to a private hospital for treatment is a security concern to BOP.

[5] Critically, "**Patients with <u>both</u> chronic kidney disease and peripheral arterial disease had the highest mortality rate (45%) compared with patients with chronic kidney disease alone** (28%), peripheral arterial disease alone (26%), and neither condition (18%). After adjustment for clinical and demographic variables, **the chronic kidney disease and peripheral arterial disease group had an increased odds for death when compared with the no chronic kidney disease or peripheral arterial disease group or the single disease groups.**" Yin Ping Liew,[*] John R. Bartholomew,[†] Sevag Demirjian,[*] Jeannie Michaels,[‡] and Martin J. Schreiber, Jr.[*] , **CLIN. J. AM. SOC. NEPHROL**. 2008 Jul; 3(4): 1084–1089. (emphasis added).

12. Importantly, the **Defendants have failed to diagnose or obtain an MRI of the increasingly growing "mass" of unknown etiology on his kidney**. This is clearly documented in the BOP medical records sought ancillary to this Complaint.

13. Moreover, medical records reflect that Plaintiff suffers severely from the following other aggravating medical conditions: "Anemia (unspecified)"; "Disorder of White Blood Cells"; "Chronic Obstructive Pulmonary Disease"; "Glaucoma;" "Hypertension"; "Latent Tuberculosis Infection"; "Nerve Pain"; "Neuralgia and Neuritis"; "Urinary Tract Infection"; "Severe Peripheral Artery Disease"; "Psychiatric/Behavioral: Negative for Confusion"; and, of course, "Chronic Kidney Disease" *See* **EX. 4,** Duke University Medical Record (Sept. 18, 2018). Plaintiff also has consistently low blood pressure, the combination of which makes Plaintiff an exceptionally poor risk for *any* surgery as extensive as what is presently contemplated.

14. Defendants have engaged in a persistent course of conduct whose medical and/or administrative acts and omissions manifest in deliberate indifference to Plaintiff's serious health care needs resulting in the perceived need to perform this radical, life altering surgery improvidently.

15. For the past one-year, *Defendant Sichel instructed Plaintiff to drink more water a*nd use the wheelchair on a more limited basis. However, such excessive water intake had deleterious effects on Plaintiff. It has been noted that patients "...may be at higher risk of dehydration if [they] have low blood pressure, take medicines to lower ...

blood pressure (including diuretics [water pills]), are on a low sodium (salt) diet, have kidney problems, or are 65 years of age or older."[6] Plaintiff meets these criteria of risk.

16. **Defendant Sichel's treatment protocol for Mr. Persico was contraindicated and clearly exacerbated his severe leg disease over the past one-year.** Had the proper treatment protocol been initiated as far back as almost one-year ago when the issue, in fact, physically manifested, this Defendant would have taken into account *all* known risk factors resulting in a more appropriate treatment plan, *one that helped, not exacerbated, Plaintiff's current state of severely compromised health.*

17. Plaintiff seeks injunctive relief to prevent the improvident and uninformed taking of this 85-year old man's lower limb. At this juncture, Plaintiff has not consented to surgery or stent implantation.

18. Defendant Sichel, and others presently unknown, personally participated in Plaintiff's care and treatment for the past one-year.

19. Plaintiff has experienced severe pain and suffering as a result of the Defendants' deliberate indifference to his serious health care needs.

20. Appropriate medical staff is not on duty over weekends, including November 30, 2018 to December 2, 2018, during which time **Defendants failed to ensure that Plaintiff's open wounds were not infected and the bandages changed for sterility.**

---

[6] https://www.invokana.com/sites/www.invokana-redesign.com/files/invokanafact-sheet.pdf?v=46 (site visited Oct. 26, 2018).

6

21. **Based on these emergent medical circumstances, Plaintiff is at significantly increased risk of infection that accelerates deterioration**, particularly in the correctional environment.

22. Defendants breached the statutory duty of care owed Plaintiff by failing to provide for his adequate care, treatment, and safekeeping.[7]

23. Defendants have been deliberately indifferent to Plaintiff's serious health care needs. This is evidenced by the manner in which the Defendant Warden trivialized Plaintiff's medical condition as recently as August 8, 2018.

24. In or around June 2018, Plaintiff filed an administrative Application for Compassionate Release pursuant to 18 USC §3582(c)(1)(A)[8], 28 CFR §§571.60, *et. seq.*, and BOP Program Statement 5050.59 CN-1. 8. **EX. 1**.

25. Plaintiff's Application was denied by the Defendant Warden on August 8, 2018[9] because: **"Your medical team has confirmed you are able to ambulate independently without difficulties and you are able to perform your activities or daily living." EX. 2** (emphasis added). Clearly, this is false.

26. Based on *new and significant information* concerning the nature and extent of Plaintiff's serious health care needs, the Warden's decision was arbitrary, capricious, **based on materially inaccurate medical information**, was an abuse of

---

[7] Under 18 USC §4001, "**(2)** The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and *provide for their proper* government, discipline, *treatment, care, rehabilitation, and reformation*.")(emphasis added).

[8] *See* Note 2, *supra*.

[9] The Warden's Response is dated August 1, 2018 but signed on August 8, 2018.

7

Case 5:18-ct-03340-D Document 1 Filed 12/07/18 Page 7 of 17

agency discretion and contrary to the rights, privileges and immunities secured to Plaintiff by the Fifth and Eighth Amendments.

27. Plaintiff also alleges that there was significant mitigating medical evidence in *existence at the time of the decision supporting the grant of Compassionate Release that was willfully disregarded* by Defendant Warden resulting in an incorrect application of the Compassionate Release regulations and a constitutionally impermissible result. *See United States v. Dimasi*, 220 F.Supp.3d 173 (D.Mass. 2016).

28. Defendant Mansukhani failed to timely deliver to Plaintiff the Warden's written denial of his Compassionate Release application within 20 days to permit further administrative review with a BP-9 through the Administrative Remedy Procedure process. *See* 28 CFR §§542.10, *et seq.* and BOP Prog. St. 1330.18 (Jan. 6, 2014).

29. "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." 28 CFR §542.14; BOP Prog. St. 1330.18, *supra* at 4.

30. Based upon the BOP's failure to provide Plaintiff with *timely notice* of the denial of his Compassionate Release application, Plaintiff was time barred from filing a BP-9 and further administrative remedies that may have been indicated denying Plaintiff due process under law.

31. As such, the Defendants impeded and prevented the exhaustion of administrative remedies prior to seeking judicial review of the challenged actions in violation of the Due Process Clause of the Fifth Amendment. Exhaustion must be excused.

8

32. Though incarcerated in the Federal Prison System for the past 35-years, Plaintiff has *never* filed an administrative remedy or grievance for anything nor has he ever received a Disciplinary Report.

33. Under the fact-specific circumstances pled by Plaintiff herein, Defendants' failure to ensure and provide adequate and timely care and treatment for Plaintiff's infected leg(s) materially exacerbated abject pain and suffering because he now faces the imminent prospect of leg amputation or the placement of metal stents in one or both legs without any assurance of success.

34. **Objectively, it is highly questionable— based on the totality of his serious medical conditions— that Plaintiff is likely to survive the contemplated surgery itself.**

35. Plaintiff recently filed a *de novo* Application for Compassionate Release, and supplements thereto, based on new material information of substantial significance. Defendant Warden has not yet issued a decision on the *de novo* application(s) for Compassionate Release. *See* **EX. 5**.

# MEMORANDUM OF LAW

## EXHAUSTION OF ADMINISTRATIVE REMEDIES IS EXCUSED WHERE THE AGENCY FAILED TO PROVIDE PLAINTIFF WITH THE ORDER OF DENIAL FROM WHICH TO APPEAL PRIOR TO EXPIRATION OF THE 20-DAY DEADLINE FOR FILING SUCH APPEAL

Although "[E]xhaustion of a *Bivens* claim requires a prisoner to fully comply with all four stages of the internal prison grievance procedure[,]"[10] **it is not a jurisdictional prerequisite**. Rather, the failure to exhaust is based on the agency's failure to deliver the administrative Response to Petitioner in a timely manner as required by law. Ultimately, the failure to exhaust— caused by the Bureau of Prisons' failure to timely deliver to Plaintiff the denial of Compassionate Release— excuses Plaintiff from the exhaustion requirement rendering this a matter of justiceability.

> The district courts have split on the issue, although **the majority of the decisions have held that the requirement is *not* jurisdictional**. *See Cooper v. Garcia*, 55 F.Supp.2d 1090, 1093–94 (S.D.Cal.1999); *Smith v. Stubblefield*, 30 F.Supp.2d 1168, 1170 (E.D.Mo.1998); *Harris v. Mugarrab*, 1998 WL 246450, at *2 (N.D.Ill. May 1, 1998); *Lacey v.C.S.P. Solano Medical Staff*, 990 F.Supp. 1199, 1201–07 (E.D.Ca.1997); *Palomino v. Stanton*, 1997 WL 350099, at *2 (N.D. Cal. June 17, 1997). Those that have held that 42 U.S.C. § 1997e(a) imposes a jurisdictional requirement have done so summarily based on the face of the statute and have not provided extensive analysis. *See Cheirs v. Postell*, 1999 WL 681501, at *1–*2 (N.D.Ohio Aug.26, 1999); *Navarrete v. MDC*, 1999 WL 294785 (E.D.N.Y. Mar.19, 1999); *Gibbs v. Bureau ofPrison Office, FCI*, 986 F.Supp. 941, 943–44 (D.Md.1997); *Hernandez v. Browman*, 1997 WL 383155, at *1 (N.D.Cal. July 1, 1997); *Morgan v. Arizona Dep't of Corrections*, 976 F.Supp. 892, 895 (D.Ariz.1997).

*Howard v. Headly*, 72 F.Supp.2d. 118 n. 2 (E.D.N.Y. 1999)(emphasis added).

---

[10] *Barnes v. Masters*, 2017 WL 4276829*2 (4th Cir. Sept. 6, 2017)(citations omitted).

10

In summary as to this point, there is no jurisdictional impediment to this Court's prompt review of the imminently likely and highly improvident amputation of at least one of Plaintiff's legs or attempting instead to implant stents at any time.

## DEFENDANTS' DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS HEALTH CARE NEEDS

The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health or safety ...." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In the seminal case, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.,* quoting *Gregg v. Georgia,* 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) with specific reference to inmates.

> The Court stated:
>
>> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... **We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain,"** *Gregg v. Georgia,* supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 103–105. (footnotes omitted)(emphasis added). *See also Williams v. Benjamin,* 77 F3d 756, 761 (4th Cir. 1996).

11

Under the fact-specific circumstances pled by Plaintiff herein, the Defendants' failure to provide timely and adequate care and treatment for Plaintiff's previously infected leg(s) result in abject pain and suffering and he now faces the prospect of amputation of the leg or the placement of metal stents in one or both legs, procedures that— based on the totality of his medical conditions— **undeniably diminish is already very limited life expectancy**.

### JUDICIAL CRITICISM OF THE BUREAU OF PRISONS' GROSS UNDERUTILIZATION OF COMPASSIONATE RELEASE

Fiscal limitations on the BOP make it exceedingly evident that Plaintiff's care and treatment— **so far characterized by abject willful indifference to his serious health care needs**— that the humane act of granting equitable relief would allow for a reasonable standard of medical care in the community not at prohibitively high taxpayer expense.

This would obviously relieve the BOP of the excessive costs of hospitalization, and *IF* Plaintiff survives the surgery, he would not be a *further* fiscal drain on the agency for the high maintenance medical necessities mandated by law.

Plaintiff fully appreciates that the Court's determination is not based upon a cost benefit analysis, yet with a fiscally beleaguered Bureau of Prisons Plaintiff knows with certainty that his post-surgical life expectancy, *IF* surgery is "successful" and he survives, **Plaintiff will be functionally incapacitated and the length of life will be severely diminished**. That much is well established by the referenced correctional-medical authorities, *infra*.

The undeniable reality is that life imprisonment for an inmate in this position functionally contemplates the death penalty based on limitations materially impacting the quality of care and treatment that is otherwise available in the community.

At age 85 and in such severely compromised overall health, it is indisputable that **Plaintiff will not recidivate**. Definitive empirical research on point notes that the likelihood of **recidivism decreases significantly with advanced age and infirmity**, *infra*.

The US Sentencing Commission— an independent agency in the judicial branch— recognizes that **elderly and infirm inmates like Plaintiff are unlikely to reoffend**.[11] One distinguished correctional health care expert authoritatively states:

> **[W]hen considering dangerous, violent, and predatory inmates, one does not envision an elderly man hobbling down a prison corridor with a cane or walker. However… some of the most dangerous and persistent criminals who were sentenced to life in prison without parole 30 years ago are now old, debilitated, frail, chronically ill, depressed, and no longer considered a threat to society or the institution.**

Evelyn Patterson, Ph.D., 103 AM J. of PUB. HEALTH at 526 (emphasis added). Such is this case.

Moreover, the Commission has launched a progressive initiative— as an institutional priority— to radically alter the manner in which Compassionate Release cases are determined. **This is due to the BOP's gross underutilization of Compassionate Release applications across the board.**

---

[11] *See* US Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines.* USSC.gov (site visited November 25, 2018).

It was recently reported that **from 2013 to 2017, "the BOP approved just 6% of the 5,400 applications for compassionate release; <u>266 inmates who sought compassionate release died while in custody</u>; and BOP's denials of compassionate release requests often were at odds with the opinions of the inmates, <u>treating physicians,</u> and warden."** *See* Christie Thompson, *Frail, Old and Dying but Their Only Way Out of Prison is a Coffin,* NEW YORK TIMES (March 7, 2018)(emphasis added), *cited with approval by the USSC.*[12]

The judiciary as a whole has been widely critical of the underutilization of Compassionate Release procedures. But under law, *only* the Director of the Bureau of Prisons has *standing* to file a motion with the sentencing court for Compassionate Release.[13]

As such, the Sentencing Commission is urgently seeking to review and revise the administration of Compassionate Release procedures **under USSG §1B1.13, comment.**

---

[12] *See also* Letter to Hon. Pati B. Saris, Chair, USSC from Practitioner's Advisory Group at 1-3 (March 18, 2016) USSC.gov. (visited December 6, 2018).

[13] "4. <u>Motion by the Director of the Bureau of Prisons.</u>—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). **<u>The Commission ENCOURAGES the Director of the Bureau of Prisons to file such a motion if the defendant meets ANY of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction</u> (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community."** *Id.* (emphasis added).

(n. 4)[14] in reliance upon their constitutional mission and responsibility for making sentencing policy under 28 USC §994(t).

This Court should proactively advance Plaintiff's ability to obtain adequate care and treatment in the community, at Plaintiff's family's expense, by granting the relief sought herein.

## CONCLUSION AND PRAYER FOR RELIEF

Given the failure to exhaust— measured against the equities of full and fair consideration of Petitioner's *actual* **medical condition that was misdiagnosed by Defendant Sichel one-year ago**, and by other medical personnel presently unknown— it's exceedingly evident that exhaustion must be excused for the legal reasons pled herein. The requested judicial remedies would best ensure expeditious and materially accurate, real time consideration of the totality of Plaintiff's mitigating factors supporting Compassionate Release. Moreover, Plaintiff's Application for Compassionate Release was denied without procedural due process.

**Plaintiff respectfully seeks relief in the nature of an Order granting a hearing on the Emergency Motion for a Preliminary Injunction as soon as counsel may be heard.**

Additionally, Plaintiff seeks the following relief in the nature of an Order requiring Defendants to:

---

[14] "The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets **any** of the circumstances set forth in Application Note 1. The Court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction…")." *Id.* (emphasis added).

15

Produce to Plaintiff's counsel all of Plaintiff's BOP and Duke University Hospital's MEDICAL RECORDS compiled for the **limited period** between Jan. 1, 2018 and the date of Defendants' Response to this Order; and

**Grant Plaintiff a written recommendation to the Bureau of Prisons urging a "medical furlough" to a private hospital in New York City where Plaintiff's family resides *subject to* pre-payment of anticipated expenses and hospital costs to be deposited in the Registry of this Court, or for adequate security thereof, or direct family financial arrangements with such hospital and physicians**, and

Pay compensatory and punitive damages to Plaintiff in the amount $5,000,000 as well as reasonable and necessary attorneys fees and litigation costs; and

And such other and further relief deemed necessary and proper to promote the fair and rational administration of justice.

WHEREFORE, for the foregoing reasons, it is respectfully prayed that an Order issue forthwith granting the relief as requested herein and such other and further relief deemed necessary and proper within the premises.

                                                Respectfully submitted,

                                                **JAMES B. CRAVEN III, Esq.**
                                                *Counsel for Plaintiff Persico*
                                                Liberty Market Bldg.
                                                349 West Main St.
                                                PO Box 1366
                                                Durham, NC 27702
                                                Tel. 919.688.8295
                                                **Jbc64@mindspring.com**

                        By:     */s/ James B. Craven III*
                                   NC Bar No. 997

16

Case 5:18-ct-03340-D   Document 1   Filed 12/07/18   Page 16 of 17

                        **BENSON WEINTRAUB, Esq.**
                        *Counsel for Plaintiff Persico*
                        *Pro Hac Vice*
                        1004 NE 3rd St.
                        Ft. Lauderdale, FL. 33301
                        Tel. 954.464.1314
                        **FederalHabeas@Gmail.com**

By:    /s/ *Benson Weintraub*
        FL Bar. No. 486418